Randy Lewis BAIRD, Henry Edward HEIMEYER and Terry L. FORGY *v.* STATE of Arkansas

CA CR 83-187                               671 S.W.2d 191

Court of Appeals of Arkansas
En Banc
Opinion delivered June 20, 1984

*Clyde E. Lee,* for appellants Baird and Heimeyer.

*Louis F. Mathis,* for appellant Forgy.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

TOM GLAZE, Judge. Appellants Terry Forgy, Randy

Baird and Henry Heimeyer were charged with violation of Ark. Stat. Ann. § 41-3553 (Repl. 1977), which prohibits the sale and circulation of obscene periodicals. Appellant Forgy is the owner of the State Line Book Store in Texarkana, and the other appellants are employees there. They were convicted in Texarkana Municipal Court and appealed to the Circuit Court of Miller County. After a trial *de novo* before a jury, they were again convicted. Baird was fined $250; Heimeyer was fined $250 and sentenced to thirty days in the county jail; and Forgy was fined $500 and sentenced to sixty day in the county jail. After careful deliberation of the points raised by appellants on appeal, we affirm the conviction of Forgy and reverse the convictions of Baird and Heimeyer.

On February 28, 1983, Major Cowart of the Texarkana Police Department entered the State Line Book Store and told Forgy, who was alone, that he was there to check on some permits for the store and to see if a city occupational tax had been paid. Major Cowart left the store, returned to police headquarters and ordered Officer Adcock to go to the store and buy two "obscene" magazines. Officer Adcock purchased two magazines from Forgy. After the purchases, the officers sought advice from the prosecuting attorney's office concerning whether they needed a search warrant before returning to the store. Based on that advice, the police believed that they had probable cause to arrest Forgy and returned to the book store to make the arrest and seize other obscene material. At approximately 4:00 P.M., February 28, five police officers — armed with an arrest warrant for Forgy — went to the book store to arrest him, but they found Baird in the store alone. Baird testified that the officers first began taking magazines off the rack and then asked if Forgy was there. He confirmed the officers did not have a search warrant to search the premises. After seizing forty-seven different magazines and simultaneously making a list of their titles, the officers arrested Baird and Heimeyer, who had entered the store sometime after the seizure of the magazines had begun. The officers determined the magazines were obscene by looking only at the covers of the magazines.

At trial, in addition to testimonies of the officers

describing the magazine covers they saw in the book store, the State introduced the two magazines purchased as proof of the appellants' violation of the statute. The State chose not to offer into evidence the forty-seven magazines seized by the officers when they returned to arrest Forgy, but it did introduce a list of the titles of the forty-seven magazines. Vulgar titles typical of those on the list were: "The Fucking Sucking Sisters," "Pussies For Sale," "Lez Pussy Lickers," "Ass Slappin'," and the like. The trial court admitted the two magazines and the list of titles into evidence; however, it refused to admit an "adult film" offered by the defense in their efforts to show Texarkana's relaxed community standard regarding obscene material.

Appellants raise eight points for reversal. However, only four of the arguments are based on objections made at trial, and according to *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980), only those arguments can be heard by this Court. Two of the remaining four arguments can be easily resolved, and we will do so before addressing the other, more complicated issues.

Appellants Baird and Heimeyer contend that because Forgy had actually sold some magazines and they had not, the trial court erred in not granting their motion to sever. This argument is, in effect, a claim that the State's evidence against Forgy is stronger than the evidence against them. The relative strength of the State's case against each co-defendant is a proper factor for a court to consider when ruling on a motion to sever; however, it is only one of several factors for the court to consider. *See McDaniel* v. *State,* 278 Ark. 631, 648 S.W.2d 57 (1983). Significantly, the evidence offered against the appellants was essentially the same, differing mainly in that Forgy sold two obscene magazines, but the other appellants kept or exposed obscene magazines. Given the totality of circumstances present in this case, particularly the absence of antagonistic defenses between Baird and Heimeyer and Forgy, the trial court's refusal to grant the motion to sever was not an abuse of discretion, and this Court will not disturb it on appeal. *See Daniel, supra.*

All of the appellants also urge this Court to reverse their

convictions because of the trial court's refusal to admit into evidence an adult movie then playing in Texarkana. Appellants offered the film in support of their claim that relaxed community standards regarding pornography existed in Texarkana. The State objected to the film's introduction on irrelevancy, lack of foundation and best evidence grounds. The trial court refused to let the jury see the film, stating, "[T]he jury itself represents the community and is in a (sic) inherent position to apply community standards to the case before it." The trial judge did permit the manager of the theater then showing the adult film to testify. The manager stated that the film contained scenes of "sexual acts and simulated sexual acts," and that the film was available to adults in the community.

Relevancy rulings are, of course, within the trial court's discretion and will only be reversed for an abuse of that discretion. *Hamblin* v. *State,* 268 Ark. 497, 597 S.W.2d 589 (1980). Given the possibility of confusion on the part of the jurors, we do not think the trial judge abused his discretion in refusing to admit the film into evidence. Also, the film should not have been admitted into evidence because the proffered evidence showed only that the film was available in Texarkana. Before a proffer of material is admissible as probative of community standards on obscenity, the proponent must establish a reasonable degree of community acceptance of the proffered material; however, mere availability in the community of the proffered material does not, of itself, prove the material measures up to the community standard. *See Hamling* v. *United States,* 418 U.S. 87, 125-26 (1974); *United States* v. *Pinkus,* 579 F.2d 1174, *cert. dismissed* 439 U.S. 999 (1978).

We now turn to the issue that gives us the most difficulty. Appellants argue that the seizure of the magazines by the police officers violated their rights protected by the First and Fourth Amendments to the United States Constitution. Because the seizure of the magazines was unconstitutional, the appellants contend that the list of the titles of the magazines that was compiled as part of that seizure was inadmissible against them. Citing *Roaden* v. *Kentucky,* 413 U.S. 496 (1973), appellants contend the police seizure of the

magazines was unreasonable. In *Roaden,* a county sheriff in Kentucky viewed a film at a drive-in theater and, based on his own predisposition, concluded that it was obscene. Without a prior determination by an impartial magistrate of the obscene nature of the film or a search warrant, the sheriff arrested the manager of the theater and seized the film. The United States Supreme Court held that such a seizure was invalid. Reiterating that the seizure of books and film arguably protected by the First Amendment is to be assessed in light of a "higher hurdle in the evaluation of reasonableness" than the seizure of dangerous weapons or stolen goods, the Court concluded that police officers should not make this determination based upon their own subjective determinations of obscenity. In order to fully protect First Amendment rights, the police should let an impartial and neutral magistrate determine whether probable cause exists for the seizure of the allegedly obscene materials.

In the instant case, as in *Roaden,* the police officers had no search warrant when they made the seizure of the allegedly obscene material; there had been no prior independent judicial determination concerning whether the allegedly obscene material was, in fact, obscene and the seizure of the material was based solely on the observations of the police officers. Given the holding of *Roaden,* we must conclude that the police officers' seizure of the magazines in this case violated the appellants' First Amendment right of free speech and their Fourth Amendment right to be free of unreasonable searches and seizures. *See also Gibbs* v. *State,* 255 Ark. 997, 504 S.W.2d 719 (1974). Because the list was part of the unlawful seizure, it, too, must be suppressed. *Mapp* v. *Ohio,* 367 U.S. 643 (1961). So long as police officers do not conduct an illegal seizure of material protected by the First Amendment, they are at liberty, just as other members of the public, to enter book stores. Once the police are lawfully present in the book store, they may take notes and compile lists to prepare themselves to go before an impartial magistrate and testify in order to obtain a proper search warrant. That procedure simply was not employed here. Thus, given the doctrine of *Roaden,* the admission of the list of the magazine titles was error warranting at least a reversal and a remand for a new trial for appellants Baird and Heimeyer.

Forgy's situation differs, and we hold he is not entitled to a new trial even though the list was erroneously admitted into evidence against him. The inadmissibility of the list of the vulgar titles in no way taints the admissibility of the two obscene magazines that Forgy undisputedly sold to the police.[1]

The sale of these magazines was not, of course, a "seizure" of the magazines. *See Johnson* v. *State,* 351 So.2d 10 (Fla. 1977); *Wood* v. *State,* 144 Ga.App. 236, 240 S.E.2d 743 (1977), *cert. den.* 439 U.S. 899 (1978); *State* v. *Hughes,* 519 S.W.2d 19 (Mo. 1975); *People* v. *Peters,* 82 N.Y.Misc.2d, 138, 368 N.Y.S.2d 753 (1975); *Carlock* v. *State* 609 S.W.2d 787 (Tex.Crim.App. 1981). Therefore, because the sale of the magazines was not a seizure of protected First Amendment material, the *Roaden* doctrine does not apply to the admission of the two magazines that were purchased. Even though the list should not have been admitted against Forgy, the evidence, in the form of the two magazines that he sold, is so overwhelming that the error, even if it is of constitutional proportions, is harmless beyond a reasonable doubt. Ark. R. Civ. P. 61; *Pace* v. *State,* 265 Ark. 712, 580 S.W.2d 689 (1979).

Appellants Baird and Heimeyer also question the sufficiency of the evidence against them as their eighth point for reversal. Given our disposition of their constitutional argument, we will not decide this issue. *Vowell* v. *State,* 4 Ark. App. 175, 628 S.W.2d 599, *rev'd on other grounds,* 276 Ark. 258, 634 S.W.2d 118 (1982).

In sum, because of the constitutional violation of Baird's and Heimeyer's First and Fourth Amendment rights, we reverse their convictions and remand to the trial court. We affirm the conviction of appellant Forgy.

Affirmed in part and reversed in part.

CRACRAFT, J., concurs.

---

[1]In this appeal, no one challenges the obscenity law under which appellants were charged; nor do they contend the two magazines were not obscene.

COOPER, J., concurs in part and dissents in part.

MAYFIELD, C.J., dissents as to Heimeyer and Baird.

JAMES R. COOPER, Judge, concurring in part, dissenting in part. I concur in the majority opinion insofar as it reverses the convictions of the appellants Baird and Heimeyer because of the prejudicial error inherent in the introduction of the list of magazine titles. I respectfully dissent from the majority's affirmance of the appellant Forgy's conviction when that same error is present as to him. Although the majority says it, I disagree that the admitted error was "harmless beyond a reasonable doubt." Two slightly incon-sistent rules apply where error occurs in a criminal case: first, the Arkansas Supreme Court has stated that to reverse in a criminal case, the error must be prejudicial, not harm-less, and that the appellant must demonstrate error. *Wilson v. State*, 272 Ark. 361, 614 S.W.2d 663 (1981). However, the Supreme Court has also stated that, "[O]ur settled rule is that error is presumed to be prejudicial unless we can say with confidence that it was not. *"Vaughn and Wilkins v. State*, 252 Ark. 505, 479 S.W.2d 873 (1972). Whichever rule one chooses to apply, I think that the introduction of the list was just as much a prejudicial error as to Forgy as it was to the other two appellants. Although there is other evidence against Forgy, I am unwilling to agree that, with con-fidence, this Court should say that the error was harmless. I would reverse and remand for a new trial for Forgy, as the majority has seen fit to do as to Baird and Heimeyer.

MELVIN MAYFIELD, Chief Judge, dissenting. I do not agree with the conclusion of the majority opinion that "given the doctrine of *Roaden,* the admission of the list of the magazine titles was error warranting . . . a reversal and a remand for a new trial for appellants Baird and Heimeyer."

The majority holds that the "list was a part of the unlawful seizure" of forty-seven magazines that the police officers took off the rack of the bookstore when they went there with a warrant to arrest the owner of the store. The magazines were not offered in evidence; and, in my view, the list was not even "seized" much the less part of an "unlawful

seizure." All the police did to obtain the list was to write the titles of the magazines on a piece of paper. They didn't have to even touch the magazines to do that. They were rightly in the store and they could stand in front of the rack, read the magnificently descriptive titles, and simply write them down. Indeed, without writing anything, the officers would have to remember only a half-dozen words to adequately describe most of the titles.

The *Roaden* case has nothing to do with the admission of the officers' list into evidence. The "fruit of the poisonous tree" doctrine does not apply here because the list introduced into evidence did not result from an illegal search, seizure, or arrest. *Wong Sun* v. *United States*, 371 U.S. 471 (1963). Baird and Heimeyer do not contend that the forty-seven magazines were not obscene. The evidence supports the convictions. I would affirm.