**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Stephen M. MEYER, Defendant–Appellant.**

**No. 95CA0808.**

Colorado Court of Appeals, Div. III.

July 10, 1997.

Rehearing Denied Aug. 14, 1997.

Certiorari Denied Feb. 23, 1998.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Lynne Delisi Oliva, Assistant Attorney General, Denver, for Plaintiff-Appellee.

Jeffrey K. Holmes, Denver, for Defendant-Appellant.

Opinion by Judge NEY.

Defendant, Stephen M. Meyer, appeals from the judgment of conviction that was entered upon a jury verdict finding him guilty of two counts of murder in the first degree (consisting of one count of felony murder and one count of first degree murder after deliberation), two counts of attempted felony murder, and one count each of first degree arson, second degree burglary, criminal mischief, and attempted first degree murder (extreme indifference). We reverse as to the attempted felony murder counts and affirm the remainder of the judgment.

In November 1993, defendant started a fire in the apartment of his estranged wife (victim). The victim died in the fire but the couple's son and his girlfriend, who were present in the apartment at the time of the fire, survived. Their presence during, and escape from, the fire provided the factual basis for the two counts of attempted felony murder.

I

■ Defendant asserts that the offense of attempted felony murder is not recognized in Colorado, and thus, his conviction on those counts must be reversed. We agree.

■ To commit a criminal attempt, a defendant must engage in "conduct constituting a substantial step toward the commission" of a particular offense and must act "with the kind of culpability otherwise required" for commission of that offense. Section 18-2-101(1), C.R.S. (1986 Rep. Vol. 8B). Therefore, a defendant can be convicted for attempt of a particular offense only if that offense, when completed, requires a culpable mental state.

■ Felony murder does not require a culpable mental state. See § 18-3-102(1)(b), C.R.S. (1996 Cum.Supp.) (requiring only that the death of a person, other than one of the participants in the offense, results from acts performed in furtherance of an attempt to commit or during the commission of, or the immediate flight from, certain enumerated felonies). Therefore, felony murder is a strict liability offense which requires a culpable mental state only for the underlying felo-

ny. *People v. Hickam,* 684 P.2d 228 (Colo. 1984).

Because, under § 18–2–101(1), a criminal attempt requires the "kind of culpability otherwise required" for commission of the completed offense and the offense of felony murder does not require a culpable mental state, we conclude that the offense of attempted felony murder constitutes a logical impossibility. This impossibility is evident from the jury instruction on attempted felony murder submitted here. That instruction required the jury to determine whether defendant "knowingly and intentionally" engaged in conduct constituting a substantial step toward the commission of felony murder, an offense for which there is no culpable mental state.

We therefore decline to recognize the offense and reverse defendant's conviction for two counts of attempted felony murder.

This conclusion is in accord with the many jurisdictions that do not recognize this offense. *See People v. Franklyn,* 157 Cal. App.3d 518, 203 Cal.Rptr. 813 (1984); *State v. Pratt,* 125 Idaho 594, 873 P.2d 848 (1994) *cert. den'd, Pratt v. Idaho,* 513 U.S. 1005, 115 S.Ct. 521, 130 L.Ed.2d 426 (1994); *People v. Viser,* 62 Ill.2d 568, 343 N.E.2d 903 (1975); *State v. Darby,* 200 N.J.Super. 327, 491 A.2d 733 (App.Div.1984); *State v. Price,* 104 N.M. 703, 726 P.2d 857 (Ct.App.1986); *People v. Burress,* 122 A.D.2d 588, 505 N.Y.S.2d 272 (1986); *State v. Bell,* 785 P.2d 390 (Utah 1989). *See also Head v. State,* 443 N.E.2d 44 (Ind.1982)(declining to recognize doctrine of felony murder and attempted felony murder absent the death of the victim); *Contra Wilson v. State,* 272 Ark. 361, 614 S.W.2d 663 (1981).

The People argue that, because the offenses of attempted reckless manslaughter, *People v. Thomas,* 729 P.2d 972 (Colo.1986), and attempted extreme indifference murder, *People v. Castro,* 657 P.2d 932 (Colo.1983), are recognized in this state, this court should also recognize the offense of attempted felony murder. We reject this argument.

Both reckless manslaughter and extreme indifference murder require a culpable mental state. *See* § 18–3–104(1)(a), C.R.S. (1996 Cum.Supp.)(requiring recklessness), and § 18–3–102(1)(d), C.R.S. (1986 Repl.Vol. 8B)(requiring knowing engagement in conduct creating a grave risk of death). Therefore, the attempt to commit these offenses is possible under § 18–2–101(1).

## II

Defendant next contends that the trial court erred in failing to conduct an *in camera* examination of certain medical and school records and in refusing to make those records available to the defense. Again, we disagree.

Defendant subpoenaed the victim's hospital records as well as the high school records of his son and his son's girlfriend. The trial court determined that the records were unavailable to either side for review and declined to inspect them.

The determination of the admissibility of evidence is within the discretion of the trial court. Absent an abuse of that discretion, the trial court's determination will not be disturbed by a reviewing court. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

■ We conclude that no such abuse of discretion occurred here. With respect to the victim's hospital records, defendant provided no basiss for his assertion that the records may contain evidence supportive of his theory that the victim set the fire in a suicide attempt. Defendant also failed to overcome the physician-patient privilege protecting these records.

■ We also agree with the trial court that, under this state of the record, the privacy interest of defendant's son and his girlfriend in their school records outweighs that of defendant and precludes defendant's attempted foray into these confidential records. We conclude, therefore, that the trial court did not abuse its discretion by refusing to allow defendant to examine these records. *See People v. Ibarra, supra.*

## III

Defendant contends that the court erred in admitting into evidence a statement by the victim that was contained in a verified com-

plaint to obtain a restraining order against defendant. Defendant also argues that the court erred in admitting similar statements by the victim to her mother and her aunt. We disagree.

The statements in question were admitted under the residual hearsay exception contained in CRE 804(b)(5). In *People v. Fuller*, 788 P.2d 741 (Colo.1990), our supreme court established a five-part test for the admissibility of hearsay statements under CRE 804(b)(5) which requires, *inter alia*, that the hearsay statement be supported by "circumstantial guarantees of trustworthiness." *People v. Fuller, supra*, 788 P.2d at 744.

### A

■ Defendant argues, in essence, that the victim's statement from the verified complaint did not meet the standard of trustworthiness required by *Fuller* and that its admission was, therefore, error. Citing *People v. Dement*, 661 P.2d 675, 681 (Colo.1983), defendant also contends that the victim's statement lacked the "indicia of reliability" required to overcome his right to confront a witness against him. We disagree.

Here, the trial court determined, with evidentiary support, that all elements of the *Fuller* test were met. And, we are unpersuaded by defendant's assertion that the victim was careless in completing the paperwork in support of her verified complaint, that the paperwork contained "leading" questions, that the victim's statements therein were inconsistent, or that the victim was motivated to make false statements to obtain the restraining order.

We note that the trial court carefully excised from the verified complaint any statements that did not possess the required indicia of reliability.

■ We thus conclude that the trial court did not err in admitting the victim's sworn statement under CRE 804(b)(5) based upon its determination that the statement possessed sufficient indicia of reliability and in the absence of any evidence of bad faith on the part of the victim. We further conclude that, because the victim's statement possessed the necessary "guarantees of trust-

worthiness," the admission of that statement did not violate defendant's right to confrontation.

### B

■ Defendant next contends that the court erred in admitting the victim's out-of-court statements to her mother and aunt. Specifically, defendant asserts that these statements were inadmissible under CRE 804(b)(5) because the trial court did not determine that they were accompanied by the "circumstantial guarantees of trustworthiness" required by *Fuller*. We disagree.

Although the trial court did not explicitly address the "circumstantial guarantees of trustworthiness" associated with the victim's statements, we conclude that this determination is implicit in its ruling. The victim's statements were made to express her fear of defendant and to elicit advice about her marriage and thus appear calculated to obtain no benefit other than a personal one. Moreover, defendant has presented no evidence which would indicate a motivation on the victim's part to make false statements in this regard.

■ Furthermore, even if we were to assume, *arguendo*, that the court erred in admitting these statements, we would conclude that such error was harmless under Crim. P. 52 because these statements are nearly identical to those in the verified complaint which we have concluded were properly admitted.

### IV

■ Defendant next contends that his conviction for both arson and criminal mischief was error. He contends, in essence, that arson is a specific type of criminal mischief and that he cannot, therefore, be convicted of both offenses. We disagree.

Section 18–1–408(1)(d), C.R.S. (1986 Repl. Vol. 8B) provides that a defendant may not be convicted of two separate offenses if:

The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

The offense of arson requires, without limitation as to the amount of damage caused by the fire, the burning of an occupied structure or dwelling without the owner's consent. Section 18-4-102(1), C.R.S. (1986 Repl.Vol. 8B). The offense of criminal mischief requires damage to real or personal property with the severity of the offense varying with the amount of property damage caused. Section 18-4-501, C.R.S. (1996 Cum.Supp.).

Because the elements of these offenses are distinct, we conclude that the arson statute is not a particularized version of the criminal mischief statute, and that defendant's conviction for both offenses was, therefore, not improper.

V

We reject defendant's contention that his conviction for felony murder must be vacated because the mittimus does not reflect the merger of the conviction for that offense with that of first degree murder after deliberation.

Despite defendant's assertions to the contrary, the sentencing court here determined that these convictions merged and this determination is accurately reflected on the mittimus.

The judgment is reversed as to defendant's conviction of two counts of attempted felony murder. In all other respects, it is affirmed.

HUME, J., concurs.

CASEBOLT, J., specially concurs.

Judge CASEBOLT, specially concurring.

Although I fully concur in the results reached in all parts of the majority opinion, I write separately because, in my view, a different rationale should be employed to arrive at the conclusion that attempted felony murder is not a cognizable offense.

Felony murder is defined by § 18-3-102, C.R.S. (1996 Cum.Supp.). As pertinent here, the statute states that a person commits the crime of murder in the first degree if:

he commits ... arson ... and, in the course of or in furtherance of the crime that he is committing ... the death of a

person, other than one of the participants, is caused by anyone....

Criminal attempt is defined by § 18-2-101(1), C.R.S. (1986 Repl.Vol. 8B), which states in pertinent part:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for the commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct ... which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

At common law, felony murder was predicated on the proposition that inherent in the commission of felonies that were dangerous to life was the likelihood that death would occur. Thus, when a death did occur in the course of the commission of such a felony, the common law deemed that the intent necessary to support a conviction for murder could be inferred from the commission or attempted commission of the dangerous felony itself. *See People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304 (1980).

The doctrine presupposes that the perpetrator of a specified felony, as a matter of law, necessarily acts with the culpability from which the *mens rea* requisite to a murder conviction can be inferred. *See* W. LaFave & A. Scott, *Criminal Law* § 71 (1972).

The doctrine has been greatly criticized because of the basic premise of criminal law that liability for an act should be commensurate with the culpability or mental state of the perpetrator. *See Head v. State*, 443 N.E.2d 44 (Ind.1982).

As the majority notes, most states have rejected the crime of attempted felony murder. Most of those states have reached that conclusion by determining that, because there is no necessity for an intention to kill for felony murder to be applicable, it is logically impossible to attempt to achieve an unintended result. *See People v. Viser*, 62 Ill.2d 568, 343 N.E.2d 903 (1975). That analysis, however, has not been the analysis used in this state in determining whether attempt liability should attach to a specific crime. *See People v. Thomas*, 729 P.2d 972

(Colo.1986)(attempted reckless manslaughter is a cognizable offense); *People v. Castro*, 657 P.2d 932 (Colo.1983) (attempted extreme indifference murder is a cognizable offense); *cf. People v. Eggert*, 923 P.2d 230 (Colo.App. 1995) (attempt to commit criminally negligent homicide is not a cognizable crime). *See also People v. Krovarz*, 697 P.2d 378 (Colo.1985).

Nonetheless, I agree with the courts which conclude that the felony murder rule cannot be applied unless the death of another *actually occurs* by virtue of the commission or attempted commission of the underlying felony. *See Head v. State, supra; State v. Price*, 104 N.M. 703, 726 P.2d 857 (App.1986). Those courts reach that conclusion primarily because felony murder is a doctrine designed to make felons strictly liable for a result and thus should be narrowly applied.

Moreover, to hold otherwise would be to allow an actor to be charged with and convicted of attempted murder in every circumstance wherein the actor committed or attempted to commit the crimes enumerated in the felony murder statute, without the result of the death of another occurring. Thus, as a matter of law, any person who committed or attempted to commit arson, burglary, sexual assault, or other crimes enumerated in the felony murder statute would, *ipso facto*, be guilty of attempted murder. *See People v. Viser, supra.*

If allowed, this result would also significantly reduce the prosecution's burden of proof. If attempted felony murder were cognizable, the prosecution could merely prove the commission or attempted commission of the underlying felony, rather than proving attempted wilful, deliberate, or premeditated murder, and thereafter rely upon the presumption of intent inherent in the felony murder statute. *See State v. Price, supra.*

Additionally, this conclusion does nothing to alter the traditional application of attempt principles to the crime of homicide. When an intent to murder is evident in the course of perpetrating any of the underlying felonies listed in the felony murder statute, but no death occurs, then attempted murder may still be charged and proven under other sub- sections of § 18–3–102, C.R.S. (1986 Repl. Vol. 8B). *See also Head v. State, supra.*

Accordingly, while I join in the result announced in part I of the majority opinion, I would reach that result by the reasoning set forth above.